# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARGARET CHRISTINE SKINNER, &ast;

        **Plaintiff,** &ast;

        vs. &ast;     **Civil Action No. ADC-16-3957**

**NANCY A. BERRYHILL,** &ast;
Acting Commissioner, &ast;
Social Security Administration, &ast;

        **Defendant.** &ast;

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

## MEMORANDUM OPINION

On December 12, 2016, Margaret Christine Skinner ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny her claim for Supplemental Security Income ("SSI"). *See* ECF No. 1 (the "Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 17 and 19), and the response thereto (ECF No. 20), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED, and the decision of the SSA is AFFIRMED.

### PROCEDURAL HISTORY

Plaintiff filed her first Title XVI application for SSI on January 22, 2009. On August 27, 2010, following denials at the initial and reconsideration levels, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. Plaintiff appealed and the Appeals Council denied her appeal on October 13, 2011.

Plaintiff filed her second SSI application—the one at issue in this appeal—on December 28, 2010, which alleged disability beginning on November 7, 2007. Her second claim was denied initially and upon reconsideration on February 14 and July 12, 2011, respectively. Subsequently, on August 1, 2011, Plaintiff filed a written request for a hearing and, on November 7, 2012, a hearing was held before a second ALJ. On January 24, 2013, the second ALJ rendered a decision ruling that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") as of her application date. Plaintiff appealed the decision to the Appeals Council, and on March 10, 2014, the Appeals Council denied Plaintiff's appeal. Plaintiff appealed, and while Plaintiff's appeal of the second application was pending in this Court, Plaintiff filed a third application for SSI and a third ALJ found that Plaintiff had a disability commencing on March 18, 2014.

In February 2015, this Court granted Defendant's Consent Motion to Remand regarding Plaintiff's second SSI application, and the Appeals Council affirmed the third ALJ's finding of disability as of March 18, 2014 and remanded the second application to a new ALJ for a hearing in July 2015 to address the period prior to March 18, 2014. Pursuant to this Court's remand order, the Appeals Council also directed the ALJ to evaluate Listing 1.04 and give further consideration to a treating source opinion.

Following the remand hearing on February 10, 2016, the new ALJ evaluated whether Plaintiff was eligible for SSI from August 28, 2010, the day after the first ALJ's decision, through March 17, 2014, the day before Plaintiff was approved for benefits based on her third SSI application. On February 26, 2016, the ALJ found that Plaintiff was not disabled prior to December 23, 2013, but became disabled on that date because her age category changed. On March 23, 2016, Plaintiff filed Exceptions with the Appeals Council, and on October 28, 2016,

the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481 (2017); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On December 12, 2016, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's denial of Plaintiff's second disability application regarding the period between August 28, 2010 and December 23, 2013.[1] On August 14, 2017, Plaintiff filed a Motion for Summary Judgment. On October 13, 2017, Defendant filed a Motion for Summary Judgment, to which Plaintiff responded on October 31, 2017. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement and Defendant's Motion for Summary Judgment, including the response thereto.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the

---

[1] On November 7, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the [Act], [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." (citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson*, 434 F.3d at 653 (internal citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

4

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's RFC, which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (*e.g.*, allegations of pain) using a two-part test. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical

6

evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. ECF No. 12 at 455. At step two, the ALJ found that Plaintiff had the severe impairments of neck and

7

back disorder, shoulder pain, asthma, hip pain, synovitis, tenosynovitis, and borderline obesity. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 456. At step four, the ALJ determined that from August 28, 2010 through March 17, 2014, Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 416.967(a) except she was limited to unskilled work; she could no more than occasionally use ramps and stairs; she could do no more than occasional postural activity, but no crawling, kneeling, or climbing of ladders, ropes, and scaffolds; she could have no more than occasional exposure to atmospheric irritants, such as dust, fumes, odors, and gases; she could do no more than occasional work around moving machinery and no work at exposed heights; and she could do no pushing or pulling with the bilateral lower extremities, no more than occasional overhead reaching bilaterally, and no more than frequent fingering.

*Id.* at 457. Based on the resulting RFC, the ALJ then determined that Plaintiff was "unable to perform any past relevant work." *Id.* at 463. Finally, at step five, the ALJ found that "[p]rior to December 23, 2013, the date [Plaintiff]'s age category changed, considering [Plaintiff]'s age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed" and that "[b]eginning on December 23, 2013, the date [Plaintiff]'s age category changed, considering [Plaintiff]'s age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that [Plaintiff] could perform." *Id.* at 464–65. Accordingly, the ALJ concluded that Plaintiff "was not disabled prior to December 23, 2013, but became disabled on that date and has continued to be disabled through the date of this decision." *Id.* at 465.

## DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole and raises three specific allegations of error on appeal: (1) that the ALJ's step three determination was not supported by substantial evidence and the ALJ's failure to analyze Listing 1.04A in accordance with the remand order warrants a remand; (2) that the ALJ's RFC determination was not supported by substantial evidence; and (3) that the ALJ failed to resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). Each of Plaintiff's arguments lacks merit and is addressed below.

### A. Substantial Evidence Supports The ALJ's Determination That Plaintiff Does Not Meet A Listing.

Plaintiff contends that the ALJ failed to properly evaluate her symptoms under Listing 1.04A even though there were ample facts to support such an analysis. ECF No. 17-2 at 8–9. Specifically, Plaintiff requests a remand because the Appeals Council directed the ALJ to further evaluate the evidence, including the medical facts and opinions presented, as it related to Listing 1.04A and the ALJ failed to do so. *Id.* at 9. The Court disagrees.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that her condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). The burden of proof is on the claimant to show that she meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.* On the other hand, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (internal citations omitted).

Remand is appropriate where the "ALJ's opinion failed to apply the requirements of the listings to the medical record." *Id.* at 291–92; *see Fox v. Colvin*, 632 F.App'x. 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory analysis, at step three necessitated remand). In evaluating whether an ALJ's listing comparison was proper, however, the Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety. *See Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md. 2002) (holding that remand is not warranted "where it is clear from the record which [L]isting . . . w[as] considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the

reviewing c]ourt readily to determine whether there was substantial evidence to support the

ALJ's [s]tep [t]hree conclusion").

> Listing 1.04A states:

>> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, 1.04A. In other words, "motor loss . . . accompanied by

sensory or reflex loss" is one of four symptoms of nerve root compression under Listing 1.04A.

During his step three analysis, the ALJ explained why Plaintiff failed to meet the

requirements of Listing 1.04A:

> In accordance with the remand order, I have carefully considered the requirements of listing 1.04 (Disorders of the spine). As [Plaintiff] resides in Maryland, I have also considered AR 15-1(4), applicable in the Fourth Circuit.

> [Plaintiff]'s cervical and/or lumbar degenerative disc disease did not meet listing 1.04A during the period in question because the record does not demonstrate compromise of a nerve root or the spinal cord with additional findings of evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising, all present within a continuous 12-month period. Treatment records document normal sensory and reflex findings and no atrophy, despite some loss of motion, motor weakness, and occasional positive straight leg raising (Exhibits B5F, B10F, B23F, page 28, and B25F).

ECF No. 12 at 456–57.[2] The ALJ's reasoning therefore outlined the symptoms required by Listing 1.04A and identified the listed symptoms that were not supported by Plaintiff's medical record. Specifically, the ALJ determined that Plaintiff's "[t]reatment records document normal sensory and reflex findings and no atrophy." *Id.* at 457. The ALJ cited multiple exhibits in the record to support his findings and explained his reasoning, including support from the record, in his step three and step four discussions. Specifically, the ALJ's step four analysis contained a lengthy discussion of Plaintiff's spinal impairments, noting:

> The medical evidence confirms [Plaintiff]'s history of degenerative disc disease. A cervical MRI in 2010 showed a disc protrusion at C4-5 with mild left-sided pressure on the cord, bulges at C3-4 and C5-6 with bilateral neural foraminal narrowing, and osteophytes at C6-7 with left neural foraminal narrowing (Exhibit B20F, pages 2-3). A lumbar MRI indicated a central disc protrusion with moderate bilateral neural narrowing and facet hypertrophy (Exhibit B20F, pages 4-5). Primary care records from Jui-Chih Hsu, M.D., in 2010 document [Plaintiff]'s complaints of back pain, joint and muscle weakness, restriction of joint motion, and numbness and tingling, but contain few objective examination findings beyond "normal gait." Her neurological examination is consistently normal (Exhibit B5F, pages 3, 7, 14). In December 2010, [Plaintiff] had tenderness in her neck with movement moderately restricted in all directions (Exhibit B5F, page 14). By February 2011, there were no neck findings documented (Exhibit B4F, page 9). However, a few days later, [Plaintiff] reported that she had pain in her neck and back after a car accident. She had muscle spasms in her neck and shoulders and pain between her shoulder blades, and was prescribed a soft cervical collar (Exhibit B5F, pages 5-7). MRIs in 2011 indicated the two herniations in the cervical spine, but no cord impingement or compression, and the herniation at L4-5 with mild spinal stenosis (Exhibit B8F). EMG/nerve conduction studies in 2011 revealed acute right C6 radiculopathy and right L4-5 radiculopathy (Exhibits B7F and B9F).

> . . . .

---

[2] The ALJ proceeded to consider Listing 1.04B and 1.04C, ECF No. 12 at 457, but Plaintiff does not challenge those decisions by the ALJ.

> In November 2012, [Plaintiff] was evaluated by a neurologist.
> Examination findings included normal gait, intact sensation,
> normal, 5/5 muscle strength, normal reflexes, no limitation in
> cervical movements, and only mild limitation in the lumbar spine.
> She was referred for pain management treatment (Exhibit B25F).

*Id.* at 458–59.

Plaintiff insists that the record contained sufficient evidence to support a determination

that she met or equaled Listing 1.04A. Specifically, Plaintiff points to Dr. Hsu's medical records

as support of her numbness and tingling, ECF No. 20 at 2–3, but the ALJ noted that "Dr. Hsu's

notes reflect that [Plaintiff] complained of numbness and tingling [in her right hand] but there

were no neurological findings documented," ECF No. 12 at 459. Plaintiff also offers other

evidence in the record to support a finding of sensory or reflex loss, but even if Plaintiff's

evidence supported a conclusion that Plaintiff met Listing 1.04A, this Court's role is not to

reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate

whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907

F.2d 1453, 1456 (4th Cir. 1990). Thus, while there may be substantial evidence in the record

that would support a finding of disability, in addition to substantial evidence supporting the

ALJ's contrary finding, this Court should not disturb the ALJ's conclusion so long as it is one of

the conclusions supported by substantial evidence. Therefore, in light of the evidence in the

medical record related to sensory or reflex loss discussed at step four, the Court concludes that

substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal

Listing 1.04 and must affirm.

## B. Substantial Evidence Supports The ALJ's RFC Determination.

Where a claimant's impairment is not sufficiently severe to equal or exceed a listed

impairment, the ALJ must then assess the claimant's RFC. RFC assesses "the maximum degrees

to which the individual retains the capacity for sustained performance of the physical—mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. § 404.1545(a) (ordering the ALJ to consider the entire record); SSR 96-8p, at *2 (defining RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Thus, the ALJ must also consider, and may rely on, the opinions of non-treating sources. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). As is the case with the opinions of physicians and psychologists, the ALJ is required to weigh the opinions of non-treating sources and explain the reasons behind the weight given. *See* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). If more than one impairment is present, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." (citation omitted)).

Social Security Ruling 96–8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion
> describing how the evidence supports each conclusion, citing
> specific medical facts (e.g., laboratory findings) and nonmedical
> evidence (e.g., daily activities, observations). In assessing RFC,
> the [ALJ] must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular
> and continuing basis (i.e., 8 hours a day, for 5 days a week, or an
> equivalent work schedule), and describe the maximum amount of
> each work-related activity the individual can perform based on the
> evidence available in the case record. The [ALJ] must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

SSR 96–8p, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p). "Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Id.* (quoting SSR 96-8p).

During its step four evaluation, the ALJ determined that from August 28, 2010 through March 17, 2014, Plaintiff could "perform sedentary work" with the following limitations:

> she was limited to unskilled work; she could no more than
> occasionally use ramps and stairs; she could do no more than
> occasional postural activity, but no crawling, kneeling, or climbing
> of ladders, ropes, and scaffolds; she could have no more than
> occasional exposure to atmospheric irritants, such as dust, fumes,
> odors, and gases; she could do no more than occasional work
> around moving machinery and no work at exposed heights; and she
> could do no pushing or pulling with the bilateral lower extremities,
> no more than occasional overhead reaching bilaterally, and no
> more than frequent fingering.

ECF No. 12 at 457. Plaintiff challenges the ALJ's RFC determination, arguing that substantial evidence does not support the RFC determination because the ALJ (1) afforded medical source

opinions "little" weight and (2) erroneously evaluated Plaintiff's credibility. ECF No. 17-2 at 22–29. Plaintiff's arguments are unavailing.

     1. The ALJ properly weighed the testimony of Plaintiff's physicians in making his RFC determination.

Plaintiff contends that the ALJ erroneously afforded little weight to the opinions of Dr. Hsu, her treating physician, and Kishor Patil, M.D., a neurologist who saw Plaintiff on a few occasions. *Id.* at 24–25. The Court disagrees.

Section 404.1527 of the regulations governs an ALJ's consideration of the medical opinion given by a treating source. *See* 20 C.F.R. § 404.1527(d). That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including . . . what [the claimant] can still do despite impairment(s)." 20 C.F.R. § 404.1527(a)(1). The regulations further provide that a medical source's statement about what a claimant can still do despite his or her impairment should be based on the acceptable medical source's findings that are supported by a combination of medical history, clinical findings, laboratory findings, diagnoses, and prognoses. *See* 20 C.F.R. § 416.913(a).

After reviewing Dr. Hsu's records with regard to Plaintiff, the ALJ assigned little weight to her opinion, articulating his reasoning as follows:

> I have considered Dr. Hsu's opinions in accordance with 20 CFR 416.927(d)(2) and SSR 96-2p and do not give them controlling weight. The limitations indicated are not all well supported by objective medical findings and are inconsistent with [the consultative physician]'s report. I give no weight to the 2009 opinions as they were rendered prior to the period at issue, although I find some postural and environmental limitations are warranted. I give little weight to the 2012 and 2015 statements. Although Dr. Hsu has been treating [Plaintiff] for a number of years and has a relationship with her, she is a primary care physician and not a specialist with expertise in assessing functional

limitations due to orthopedic impairments. Moreover, Dr. Hsu's treatment records do not document sufficient examination findings, or even reported symptoms, that would justify the significant exertional limitations included in the statements. As noted above, [Plaintiff] did not have any specialized treatment with an orthopedist prior to the established onset date, so the limitations Dr. Hsu noted are not consistent with the record as a whole. I find that the evidence supports the postural, manipulative, and environmental limitations included in the [RFC], so I give some weight to consistent limitations found by Dr. Hsu. I give no weight to Dr. Hsu's conclusory opinion that [Plaintiff] is "totally disabled," as this is reserved to the Commissioner (SSR 96-5p).

ECF No. 12 at 462.

Under the treating physician rule, an ALJ must generally give a treating physician's opinion "more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927 (c)(2)). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion: (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the physician is a specialist giving an opinion about his area of specialty, and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6).

An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D.Md. July 27, 2011). The regulations require only that "good reasons" be provided for the weight given to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2).

The Court concludes that the ALJ satisfied his burden to produce substantial evidence contradicting Dr. Hsu's opinions by drawing on Dr. Hsu's own treatment records and the consultative physician's report. The ALJ explained that despite the nature and length of the treatment relationship, Dr. Hsu was not a specialist and her opinion was not consistent with the record as a whole because the consultative physician's report contained conflicting opinions. Consequently, the Court finds that the ALJ's reasoning for giving Dr. Hsu's opinion little weight was supported by good reasons and substantial evidence in the record and that the ALJ did not err in according little weight to Dr. Hsu's conclusion with regard to Plaintiff's symptoms and limitations. *See* 20 C.F.R. § 404.1527(d).

Next, regarding the opinion of Plaintiff's neurologist, Dr. Patil, Plaintiff contends that the ALJ failed to properly consider Dr. Patil's opinion in accordance with the Appeal Council's remand order and 20 CFR 416.927. ECF No. 17-2 at 26–28. Plaintiff is wrong.

In his decision, the ALJ discussed Dr. Patil's narrative report in connection with Plaintiff's 2011 car accident and explained his decision to assign little weight to Dr. Patil's opinion as follows:

> I give little weight to [Dr. Patil's] report as it is based on [Plaintiff]'s self-reported symptoms and limitations; there are no objective examination findings cited in support of any opinions expressed in this report. There are no treatment records from [Dr. Patil] in the record, other than two EMG reports, neither of which document any examination findings. An evaluation by another neurologist in November 2012 revealed unremarkable examination findings and no mention of [Plaintiff]'s 2011 accident or problems

> bending, pushing, turning, or twisting. Regardless, [Plaintiff]'s
> [RFC] includes a limitation for only occasional postural activity
> and no pushing or pulling with the lower extremities.

ECF No. 12 at 462 (record citations omitted). Thus, contrary to Plaintiff's contention, the ALJ weighed Dr. Patil's opinion against the evidence in the record and clearly articulated the reasoning for the weight he afforded to it. Pursuant to 20 C.F.R. § 404.1527, the ALJ considered Dr. Patil's specialty as a neurologist, the lack of support for Dr. Patil's opinions within the rest of the record, and the inconsistencies between Dr. Patil's opinions and other evidence in the record. Specifically, the ALJ pointed to contrary evidence from a consultative neurologist and omissions in Dr. Patil's own records. *See* ECF No. 12 at 462. Accordingly, the Court finds no error in the ALJ's evaluation of Dr. Patil's opinion evidence, and the ALJ's assessment of Dr. Patil's opinion evidence was supported by substantial evidence in the record.[3] Consequently, the Court rejects Plaintiff's allegation of error.

In summary, the Court finds that the ALJ's reasoning for giving the opinions of Plaintiff's physicians little weight was fully articulated in the ALJ's written decision and supported by good reasons and substantial evidence in the record. *See* 20 C.F.R.§ 404.1527(d). Accordingly, the ALJ did not err in affording little weight to Plaintiff's physicians' opinions.

2. The ALJ properly determined Plaintiff's credibility.

Plaintiff contends that the ALJ inappropriately determined her credibility by relying on speculative statements related to her criminal history, as well as the facts that she did not go to the emergency room after her car accidents and that she drives. ECF No. 17-2 at 22–23. Plaintiff relies on *Haines v. Astrue*, SAG-10-cv-822, 2012 WL 94612 (D.Md. Jan. 10, 2012), as support that the ALJ did not properly evaluate her subjective allegations of disabling pain. *Id.* at

---

[3] Regardless, as the ALJ noted in his decision, he considered Dr. Patil's opinion in determining Plaintiff's limitations when he included certain limitations in the RFC.

22. Defendant argues that the ALJ provided several reasons for finding that Plaintiff's symptoms were not as severe as she alleged and that he applied "common knowledge regarding the physical and mental requirements of driving." ECF No. 19-1 at 15. Alternatively, Defendant takes the position that to the extent that the ALJ's discussion was improper, any error was harmless because the ALJ gave other sounds reasons for his decision. *Id.* at 16. The Court agrees with Defendant.

The Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and her treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3).

In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate her allegations of pain. 20 C.F.R.

§ 404.1529; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render the claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [the claimant's] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

Regarding Plaintiff's pain, the ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely credible." ECF No. 12 at 458. The ALJ explained his reasoning as follows:

> The objective medical evidence does not document sufficient clinical findings to support [Plaintiff]'s allegations of disabling neck, back, and extremity pain prior to the established onset date. Although testing establishes [Plaintiff]'s degenerative disc disease, examination findings have not revealed significant abnormalities or deficiencies consistent with functional limitations. Cervical tenderness and 4/5 upper extremity strength supports the finding that [Plaintiff] can lift only ten pounds occasionally, but there is nothing in her treatment records to support her testimony that she cannot lift more than five pounds. Dr. Hsu opined that [Plaintiff] can lift only five pounds in treating source opinions addressed [above], but her contemporaneous treatment notes do not reflect that she ever placed restrictions or work limitations on [Plaintiff]. There is also insufficient evidence to support [Plaintiff]'s

allegations that she can stand and walk only brief periods at a time. [Plaintiff]'s gait is described as normal, even if slow, and she did not use a cane. Treatment records document minimal objective findings related to [Plaintiff]'s lower extremities or range of motion. [The consultative physician] found that [Plaintiff] had reduced strength in her legs as well as positive straight leg raising, but he concluded that she could stand and walk "occasionally." This is consistent with a sedentary [RFC], requiring only two hours of combined standing and walking a day.

Recognizing that symptoms such as pain can sometime suggest a greater level of severity than shown by the objective evidence alone, I have evaluated [Plaintiff]'s pain in accordance with 20 CFR 416.929(c)(3) and SSR 96-7p, and find that the allegations are not fully credible. Despite her complaints of disabling pain, [Plaintiff] did not pursue extensive treatment prior to her established onset date. She saw Dr. Hsu somewhat regularly for medication and sick visits, but there is no indication that [Plaintiff] was evaluated by an orthopedist before her established onset date for her neck, back, or shoulder. She had some physical therapy and chiropractic care, as well as injections, but did not seek a referral for treatment with another specialist beyond a few visits with a neurologist. The neurologist suggested in November 2012 that [Plaintiff] see a pain management specialist, but there is no record of such if [Plaintiff] did follow this advice.

[Plaintiff] grossly overstates her functional limitations, and I accord her testimony little weight. As of three days prior to the initial date I am evaluating (e.g., as of August 25, 2010), [Plaintiff] was serving as a caregiver for her mother, and had enough energy to not need to nap during the day. While [Plaintiff] had been diagnosed with heart palpitations (and has experienced, *inter alia*, PVCs), she has had a normal EKG and has a normal ejection fraction. [Plaintiff] spent about five years in prison for distribution of cocaine, and did use illicit substances thereafter. [Plaintiff] was on probation following her release from prison, and is currently on parole until December 2016. That [Plaintiff] has been incarcerated, has a felony conviction, and is currently on parole, likely complicates any search for work and gives [Plaintiff] an incentive to exaggerate her symptomology. In fact, [Plaintiff] testified that she lost her last job specifically because she had a felony record. During the period of time I am examining, [Plaintiff] did not use a cane. Not infrequently, her gait was observed to be unremarkable. That [Plaintiff] did not use a cane during this period suggests an ability to ambulate effectively and independently. During this period, [Plaintiff] had two motor

22

vehicle accidents. One was in February 2011, after which she did not immediately go to the ER, and one was in March 2012, after which she did not immediately go to the ER. That [Plaintiff] was able to drive a car shows concentration and persistence, an ability to use hand and foot controls, an ability to turn her head (say, when backing up and changing lanes), and an ability to deal with the stress inherent in operation of a motor vehicle. At the time of the second motor vehicle accident, she stated that her symptoms from the first accident "were improved." Interestingly, [Plaintiff] filled out a function report . . . in which she stated she does not drive a car, but this is inconsistent as we know she did; this erodes her credibility. Although there is no mention of providing care for her mother in [Plaintiff's February 2011 function report], [Plaintiff] does state . . . that she does some light cleaning and cooking for her mother, and helps her around the house--this was about nine months into the time period I address herein. That [Plaintiff] could act as a caregiver for her mother shows concentration and persistence, as well as some physical functioning.

*Id.* at 460–61 (internal record citations omitted).

While the ALJ acknowledged Plaintiff's testimony about the pain symptoms caused by her physical impairments, he pointed to several facts which were inconsistent with Plaintiff's claims regarding her pain and limitations. The ALJ referenced Plaintiff's own testimony that she cares for her mother, performing some light regular, daily activities, including cleaning and cooking, and that she can walk without a cane. *Id.* at 461. In addition, the ALJ considered that Plaintiff neither sought the advice of a pain specialist nor medical treatment at the hospital immediately following her two car accidents. *Id.*; *see Mickles*, 29 F.3d at 930 (stating that the level and type of treatment sought by a claimant can be considered by an ALJ in determining what weight to accord her allegations of pain). Such considerations are not speculative, as Plaintiff contends while relying on *Haines*. 2012 WL 94612, at *2 (stating that an ALJ's assertion "that the Claimant's multiple disability applications and poor work record evidences a secondary gain motivation to seek disability payments instead of working" is "inappropriate because it is purely speculative" (internal quotation marks omitted)).

Finally, regarding Plaintiff's criminal history, some courts have reasoned that a claimant can be found not credible because of a felony conviction, *see, e.g.*, *Simmons v. Massanari*, 264 F.3d 751, 756 (8th Cir. 2001) (determining that the ALJ properly rejected claimant's subjective complaints based, in part, on the claimant having served time in prison); *Smith v. Astrue*, 851 F.Supp.2d 305, 310 (D.Mass. 2012) (stating that a criminal record may undermine credibility so long as that is not the sole reason that the ALJ discounts the claimant's testimony); *Williams v. Comm'r of Soc. Sec.*, 423 F.Supp.2d 77, 84 (W.D.N.Y. 2006) (determining that the ALJ properly based negative credibility determination, in part, on claimant's testimony that "she had engaged in assaultive conduct and possibly criminal behavior in the past"), while other courts have limited this rationale to convictions involving moral turpitude, *see, e.g.*, *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D.Cal. 2007) (determining that "mere assault convictions" could not properly form the basis of an ALJ's credibility determination because they did not involve moral turpitude); *Longanecker v. Comm'r of Soc. Sec.*, No. 1:16-cv-417, 2017 WL 217802, at *5 (W.D.Mich. Jan. 19, 2017) (stating that "it is well accepted that an ALJ may, when assessing a claimant's credibility, take into consideration the claimant's criminal history, especially when such involves crimes involving theft and/or dishonesty"). This Court has not determined whether all felony convictions or just those involving moral turpitude may be considered in determining a claimant's credibility. Plaintiff's drug-related conviction would not classify as one involving moral turpitude, but regardless of whether moral turpitude is required, the ALJ has provided ample other reasons for finding that Plaintiff was not credible. Therefore, the ALJ properly considered the evidence of record and found that the evidence contradicted Plaintiff's subjective claims regarding her impairments.

## C. The ALJ Properly Considered The Conflict Between The VE's Testimony And The DOT.

Plaintiff contends that the ALJ did not comply with the requirements of SSR 00-4p. ECF

No. 17-2 at 21. Citing to *Pearson v. Colvin*, 810 F.3d 204, 210–11 (4th Cir. 2015), Plaintiff

argues that the ALJ erroneously relied on the VE's testimony that there was no conflict between

the VE's testimony and the DOT and that the ALJ failed to adequately address a conflict

regarding Plaintiff's ability to reach. *Id.* Plaintiff seeks a remand to address the conflict between

Plaintiff's inability to perform overhead work and the requirements of the DOT pertaining to

reaching in any direction and, if a conflict exists, to determine whether a reasonable explanation

exists for the conflict. *Id.* at 22. Defendant, however, distinguishes Plaintiff's circumstances

from those in *Pearson* because the ALJ asked the VE specifically about directional reaching and

the VE provided an explanation upon which the ALJ was entitled to rely. ECF No. 19-1 at 17–

18.

SSR 00-4p explains that its "purpose" is to require the ALJ (not the VE) to "[i]dentify

and obtain a reasonable explanation" for conflicts between the VE's testimony and the DOT, and

to "[e]xplain in the determination or decision how any conflict that has been identified was

resolved." 2000 WL 1898704, at *1 (Dec. 4, 2000). The Ruling then proceeds to require that

the ALJ undertake exactly these responsibilities. First, the ALJ must "[a]sk the VE . . . if the

evidence he or she has provided conflicts with information provided in the DOT;" and second,

"[i]f the VE's . . . evidence appears to conflict with the DOT," the ALJ must "obtain a reasonable

explanation for the apparent conflict." *Id.* at *4. Notably, this second requirement is so

independent of the first that it does not rest on the VE's identification of a conflict. Rather, SSR

00–4p directs the ALJ to "resolve the conflict by determining if the explanation given by the VE

... is reasonable," *id.* at \*2, and to "explain the resolution of the conflict irrespective of how the conflict was identified," *id.* at \*4.

Here, during the hearing, the ALJ expressly asked the VE to "specifically address the basis of your testimony with respect to the directional reaching." ECF No. 12 at 524. The VE answered that her testimony was consistent with the DOT and that "[t]he information regarding directional reaching is gleaned from the Selected Characteristics of Occupations, which is a companion module to the DOT, as well as my work experience a as vocational counselor." *Id.* at 525. Based on this testimony, at step five of the analysis, the ALJ determined that the VE's testimony was consistent with the information contained in the DOT. *Id.* at 464.

The ALJ here, unlike in *Pearson*, directly questioned the VE about the consistency of the VE's testimony and the DOT and the VE provided a sufficient explanation, referencing a companion publication and her prior relevant experience. *See Fisher v. Barnhart*, 181 F.App'x 359, 365 (4th Cir. 2006) (per curiam) (recognizing that an ALJ may rely on conflicting VE testimony if he finds that it is based on another reliable publication or the VE's own experience in job placement or career counseling (citing SSR 00-4p)). In this manner, the ALJ identified and addressed the conflict between Plaintiff's overhead reaching limitation and the DOT job descriptions, and the VE provided an explanation upon which the ALJ was entitled to rely. Thus, substantial evidence supports the ALJ's findings, and the Court affirms the decision of the ALJ.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Act before December 23, 2013. Pursuant to 42 U.S.C. § 405(g), "[t]he

26

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 11/20/17

A. David Copperthite
United States Magistrate Judge